1  Ali Salamirad, Bar No. 209043
   Teresa L. Polk, Bar No. 111975
2  **SALAMIRAD MORROW P.C.**
   19200 Von Karman Avenue, Suite 400
3  Irvine, California  92612
   Telephone:   949-477-8068
4  Facsimile:    949-477-8069
   as@salamiradmorrow.com
5  tp@salamiradmorrow.com
6
   Attorneys for Defendant, Counter-Claimant,
7  and Cross-Claimant INTERNATIONAL
   FIDELITY INSURANCE COMPANY
8

```
                          FILED
                 CLERK, U.S. DISTRICT COURT

                      JAN – 9 2014

                 CENTRAL DISTRICT OF CALIFORNIA
                 BY                        DEPUTY
```

9             UNITED STATES DISTRICT COURT
10     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
11

12  NACIMIENTO WATER COMPANY,          Case No. CV13-07959 DDP (MRWx)
13  INC., a California  corporation,

14              Plaintiff,

15     vs.                             **INTERNATIONAL FIDELITY
                                       INSURANCE COMPANY'S
16  INTERNATIONAL FIDELITY             FIRST AMENDED
    INSURANCE COMPANY, a New           COUNTERCLAIM, AND CROSS-
17  Jersey corporation AND DOES 1-20,  CLAIM:**
    inclusive,
18                                     **1. Breach of Contract**
                Defendants.
19                                     **2. Statutory Indemnity**

20  INTERNATIONAL FIDELITY             **3. Specific Performance**
    INSURANCE COMPANY, a New
21  Jersey corporation,                **4. Quia Timet**

22                                     **5. Declaratory Relief**
                Counterclaimant and
23              Crossclaimant,

24     vs.                             **DEMAND FOR JURY TRIAL**

25
    NACIMIENTO WATER COMPANY,
26  INC., a California corporation; SMS
27  RESORTS, INC., a California
    corporation; JOHN E. KING; CAROLE
28  E. KING; JONATKIM ENTERPRISES,

SALAMIRAD
MORROW
A PROFESSIONAL LAW
CORPORATION

**DEVELOPERS SURETY AND INDEMNITY COMPANY'S FIRST AMENDED COUNTERCLAIM AND
CROSSCLAIM**

a California general partnership; OAK
SHORES II SPE, LLC, a Nevada limited
liability company, previously named
herein as ROE 1; and ROES 2 through
10 Inclusive,

Counterdefendant and
Crossdefendants.

## I.

## DEMAND FOR JURY TRIAL

Defendant, crossclaimant and counterclaimant INTERNATIONAL FIDELITY INSURANCE COMPANY ("IFIC") hereby demands a jury trial as to all issues and causes of action on which it has a right to trial by jury herein.

## II.

## FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

## JURISDICTION AND VENUE

1.      This proceeding is instituted pursuant to 28 U.S.C. section 1332, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and there exists complete diversity of citizenship between and among IFIC, on the one hand, and all other parties to this action, on the other.

2.      Venue is proper in the United States District Court for the Central District of California, Western Division, because the events or omissions occurred therein, and the Plaintiff and Crossdefendants reside or have their principal place of business located within the District.

## PARTIES

3.      IFIC is a New Jersey corporation with its principal place of business in Newark, New Jersey.  IFIC is an admitted surety insurer authorized to engage in the business of suretyship in the State of California, among other jurisdictions, in the course of which it issues surety bonds, among other bonds and lines of insurance.

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 2 -
INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

4.     Plaintiff and counterdefendant NACIMIENTO WATER COMPANY, INC. ("Water Co.") is a California corporation with its principal place of business in the County of San Luis Obispo, California. Water Co. is, and at all times herein mentioned was, a privately held corporation engaged in business as a water company for profit.

5.     Crossdefendants JOHN E. KING and CAROLE D. KING (collectively and individually "King") are individuals residing in the County of San Luis Obispo, California.

6.     Crossdefendant SMS Resorts, Inc. ("Resorts") is a California corporation with its principal place of business in the County of San Luis Obispo, California.

7.     Crossdefendant JONATKIM ENTERPRISES ("Jonatkim") is a California general partnership with its principal place of business in Anaheim, California.

8.     Crossdefendants named as ROES 2 through 10, inclusive, are assignees, heirs, grantees, and successors-in-interest to King, and other persons holding, or claiming to hold, an interest in the real property in issue in this litigation, which is Tract 2162, Phase I, San Luis Obispo County, California, the recorded Tract Map for which was recorded in the official records of the San Luis Obispo County Recorder on October 7, 2003 as Document No. 2003-115530, and all real property contained therein (the "Subdivision").

9.     Crossdefendant OAK SHORES II SPE, LLC ("Oak Shores"), is a Nevada limited liability company whose members are individuals residing in the State of Nevada, with its principal place of business in the State of California. Crossdefendant Oak Shores was previously named in IFIC's original Answer, Counterclaim and Crossclaim, by the fictitious name of ROE 1, and its true name of OAK SHORES II SPE, LLC is hereby substituted in place of said fictitious name.

SALAMIRAD
MORROW
A PROFESSIONAL LAW
CORPORATION

- 3 -
INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

On information and belief, Oak Shores is the current owner of most or all of the Subdivision by a trustee's deed, as the successful purchaser at a foreclosure in December, 2013, and is a successor-in-interest to King as further alleged hereinbelow.

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of crossdefendants ROES 2 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by fictitious names.  Plaintiff will amend its complaint to show these crossdefendants' true names and capacities when the same are ascertained.

11.     IFIC is informed, believes and thereon alleges, that at all times herein mentioned, counterdefendant and each of the crossdefendants was an agent, servant, employee, co-conspirator and/or joint venturer of every other of the remaining counterdefendant and crossdefendants, and performed the acts and omissions complained of herein in the course and scope of such agency, service, employment, conspiracy and/or joint venture.

## GENERAL ALLEGATIONS

12.     This action involves the development of a subdivision known as Tract 2162, Phase I, located in San Luis Obispo County, California, and sometimes described as "Oak Shores II" (the "Subdivision").

13.     IFIC issued numerous performance bonds and payment bonds on behalf of Crossdefendants King, Resorts, and Jonatkim, as the bond principals, in connection with various contracts and agreements, including Bond No. 0407462 alleged in the Complaint on file herein and other Bonds ("Bonds") as follows, related to the following contracts concerning the Subdivision ("Bonded Contracts"):

///

///

///

///

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

| **Bond** | **Obligee** | **Bonded Contract** |
| --- | --- | --- |
| 0407459 Payment Bond | County of San Luis Obispo | Tract 2162 – Onsite Improvements and Miscellaneous (Trail and Oak Tree Replacement) |
| 0407459 Performance Bond | County of San Luis Obispo | Tract 2162 – Onsite Improvements and Miscellaneous (Trail and Oak Tree Replacement) |
| 0407460 Payment Bond | County of San Luis Obispo | Tract 2162 – Lakeview Drive (On and Off Site Fire Access Road Improvements) |
| 0407460 Performance | County of San Luis Obispo | Tract 2162 – Lakeview Drive (On and Off Site Fire Access Road Improvements) Bond |
| 0407461 Payment Bond | County of San Luis Obispo | Tract 2162 – Erosian/Sediment Control Plans for Marina and Access Road |
| 0407461 Performance Bond | County of San Luis Obispo | Tract 2162 – Erosian/Sediment Control Plans for Marina and Access Road |
| 0407462 | Water Co. | Contract to Supply Water to Subdivision (herein "Water Supply Contract") |

14.    The aforementioned Bond. No. 0407462 is the surety bond alleged in the Complaint on file herein. Said bond was issued for King's assumption of Jonatkim's obligations under the Water Supply Contract, and was intended by the parties thereto to replace a previous bond in the same amount that Jonatkim previously provided to Water Co. Under the terms of Paragraph 3 of said bond, and on information and belief under similar terms of the previous Jonatkim bond, the dollar limit of the surety's potential liability under the bond was to be reduced by all payments received by Water Co. under the Water Supply Contract such that the

1    dollar limit of the bond would reflect the remaining principal amount of the unpaid
2    portion of the funds owed by Jonatkim, King, Oak Shores, and ROES 2 through 10,
3    and their successors and assigns, under Section 4.01 of the Water Supply Contract.
4    Prior to the date of this First Amended Counterclaim/Crossclaim, Jonatkim, King
5    and others have paid at least the sum of $190,000.00 to Water Co. under Sections
6    4.01(i), (ii) and (iii) of the Water Supply Contract, thereby reducing the dollar limit
7    of said bond to no more than $310,000.00 or such other amount as is according to
8    proof at trial.

9        15.    On or about February 4, 2004, to induce IFIC to issue bonds,
10   Crossdefendants King and Resorts, and each of them, executed an General
11   Indemnity Agreement ("Indemnity Agreement") in favor of the IFIC under which
12   they promised to "indemnify and exonerate International Fidelity Insurance
13   Company from and against any and all loss and expense of whatever kind,
14   including interest, court costs and counsel fees" which it may incur or sustain as a
15   result of or in connection with "(1) the furnishing of any Bond; (2) the enforcement
16   of this Agreement." A true and correct copy of the Indemnity Agreement is
17   attached hereto as Exhibit A and incorporated herein by this reference.    Paragraph
18   8 of said Indemnity Agreement provides that it is "in addition to and not in lieu of
19   any other agreements and obligations undertaken in favor of" IFIC.

20       16.    On or about June 23, 2005, to induce IFIC to issue said bonds,
21   Crossdefendants King, and each of them, executed an additional Indemnity
22   Agreement in favor of the IFIC under which they promised to "exonerate,
23   indemnify, and keep indemnified IFIC from and against all liability for losses
24   and/or expenses of whatsoever kind or nature (including, but not limited to, interest,
25   court costs and counsel fees) and from and against any and all such losses and/or
26   expenses which the Surety may sustain and incur: (1) By reason of having executed
27   or procured the execution of the Bonds, (2) By reason of the failure of the
28   Contractor or Indemnitors to perform or comply with the covenants and conditions

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1    of this Agreement or 93) In enforcing any of the covenants and conditions of this
2    Agreement."   A true and correct copy of the Indemnity Agreement is attached
3    hereto as Exhibit B and incorporated herein by this reference.   The Sixteenth
4    Paragraph of said Indemnity Agreement provides that "the Contractor and the
5    Indemnitors shall continue to remain bound under the terms of this Agreement even
6    though the Surety may have from time to time heretofore or hereafter . . . accepted
7    or released other agreements of indemnity . . . it being expressly understood and
8    agreed by the Contractor and the Indemnitors that any and all other rights which the
9    Surety may have or acquire against the Contractor and the Indemnitors and/or
10   others under any such other or additional agreements of indemnity or collateral
11   shall be in addition to, and not in lieu of, the rights afforded the Surety under this
12   Agreement."

13        17.   Both of said Indemnity Agreements are referred to herein collectively
14   and individually as "Indemnity Agreement" or "Indemnity Agreements."   Both
15   Indemnity Agreements were in effect at all times relevant hereto.

16        18.   Crossdefendants King, Resorts and Jonatkim requested that IFIC
17   furnish the Bonds.  Relying on, among other things, the Crossdefendants promises
18   contained in the Indemnity Agreements and the statutory indemnity obligations of
19   all principals named in the Bonds, IFIC issued the Bonds.

20        19.   Plaintiff Water Co. filed suit herein alleging that Crossdefendants
21   Jonatkim and King defaulted on the contract referenced in Bond No. 0407462
22   alleged above by failing to make payment when due.  In addition, Crossdefendants
23   Jonatkim and King are in default under the contracts that are referenced in Bonds
24   No. 0407459, 0407460 and 0407461 by failing to complete the construction of
25   subdivision improvements and failure to make payments when due.

26        20.   As the proximate result of Crossdefendants Jonatkim's and King's
27   breach of their obligations under the bonded contracts and the Bonds, IFIC has paid
28   claims under the Bonds in the total amount of $565,829.00 to date.  In addition,

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 7 -

1   IFIC has incurred pre-litigation attorney fees and legal expenses recoverable as
2   damages under the Indemnity Agreements in the approximate amount of
3   $175,000.00, for a total amount of approximately $740,829.00 recoverable under
4   the Indemnity Agreements together with pre-judgment interest according to statute
5   and attorney fees and costs of court incurred in this present litigation.

6       21.    IFIC has entered into one or more tolling agreements with the County
7   of San Luis Obispo concerning the County of San Luis Obispo's claims against
8   Bonds No. 0407460 and 0407461. Accordingly, IFIC may pay additional claims
9   under the Bonds while this litigation is pending, all of which Defendants Jonatkim
10  and King will be obligated to indemnify as further alleged herein.

11      22.    The June 23, 2005 Indemnity Agreement (Exhibit B hereto) further
12  provides that King assigns, transfers and sets over to IFIC, as collateral, to secure
13  the obligations in said Indemnity Agreement and any other indebtedness and
14  liabilities of King to IFIC, to become effective as of the date of the bond in the
15  event of any breach of the Indemnity Agreement or default in discharging other
16  liabilities when due, all of the following: (a) All the rights of King in, and growing
17  in any manner out of, "all contracts referred to in the Bonds, or in, or growing in
18  any manner out of the Bonds. . . ." The Indemnity Agreement further provides that
19  it shall constitute a Security Agreement to IFIC and a Financing Statement in
20  accordance with the Uniform Commercial Code without in any way abrogating,
21  restricting or limiting the rights of IFIC under the Indemnity Agreement. IFIC has
22  perfected its security interest in all such rights by filing a UCC-1 financing
23  statement with the California Secretary of State as Document Number
24  40077620002.

25      23.    In addition to IFIC's rights under the aforementioned assignment of
26  contract rights, IFIC also holds the following statutory and equitable subrogation
27  rights as a surety under the laws of the State of California:

28

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 8 -
INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1          a.     All rights of plaintiff and counterdefendant Water Co., as

2 obligee under Bond No. 0407462, with respect to the bonded obligation (i.e., the

3 Water Supply Contract) as though that obligation had not been satisfied, effective

4 upon IFIC's payment under said bond (*Golden Eagle Ins. Co. v. First Nationwide*

5 *Financial Corporation*, 26 Cal.App.4th 160, 169-170; (1994)Restatement (Third)

6 of Suretyship and Guaranty (1995) Section 27, Comment a), including but not

7 limited to Water Co.'s rights against parties and non-parties to the bonded contract

8 (*W. World Ins. Co. v. Travelers Indem. Co.* (Fla. App. 1978) 358 So.2d 602, 604

9 (Fla. App. 1978); Gulf Insurance Company v. TIG Insurance Company, 86

10 Cal.App.4th 422, 434 (2001);

11          b.     All rights of Jonatkim and King to assert offsets against

12 Counterdefendant Water Co. related to the bonded Water Supply Contract

13 (*Wickersham Co. v. Nichols*, 22 Cal.App. 731, 733 (1913));

14          c.     The benefit of every security for the performance of the Water

15 Supply Contract held by Counterdefendant Water Co. at the time when the Bond

16 was issued, or acquired by Water Co. afterwards, whether IFIC was aware of the

17 security or not (California Civil Code Section 2849);

18          d.     The right to require Counterdefendant Water Co. to pursue any

19 other remedy in Water Co.'s power which IFIC cannot pursue, and which would

20 lighten IFIC's burden; and if Water Co. neglects to do so, IFIC is exonerated to the

21 extent to which IFIC is thereby prejudiced (California Civil Code Section 2845);

22 and

23          e.     All of Water Co.'s causes of action against Jonatkim, King, Oak

24 Shores, ROES 2 through 10, and their successors in interest, and any of them, and

25 also all causes of action of Jonatkim, King, Oak Shores, ROES 2 through 10, and

26 their successors in interest, and any of them, against Water Co. to the extent of

27 recovering all sums paid by IFIC under the Bonds.  California Civil Code Section

28 2848; *In re Estate of Elizalde*, 182 Cal. 427, 433 (1928).

SALAMIRAD
MORROW
s PROFESSIONAL LAW
CORPORATION

**INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM**

24.   Among IFIC's rights in assignment and subrogation as alleged above, Paragraph 4.1(iv) of the Water Supply Contract provides that King shall pay a per-lot fee of $5,000.00 per each subdivision lot and additional water service in the Subdivision at the time of the sale of Subdivision lots, or, in the event of a bulk sale of five or more subdivision lots by King, Oak Shores, and ROES 2 through 10 inclusive, or any of them, then said $5,000.00 per lot shall be due and payable within 18 months after such bulk sale; and, in the event that Crossdefendants King, Oak Shores, and ROES 2 through 10 inclusive, or any of them, fail to pay such $5,000.00 per lot fee for any sale of Subdivision lots, then Water Co. shall have the right to refuse water service to any such lot or lots until the $5,000.00 per lot fee is paid to Water Co. by Counterdefendants and Crossdefendants King, Oak Shores, and ROES 2 through 10 inclusive, together with 10% per year interest thereon from the date of the lot sale or sales. Moreover, the Water Supply Contract restricts King from transferring the Subdivision to any person other than a buyer taking assignment of the Water Supply Contract pursuant to the provisions thereof. A true and accurate photocopy of said Water Supply Contract is attached hereto as Exhibit C.

25.   On information and belief, Water Co. has entered into a memorandum of understanding, contract, or tentative agreement, with Oak Shores and ROES 2 through 10 or others, by which Oak Shores and ROES 2 through 10, or others, directly or through their agents, plan to take title to at least 58 lots of the Subdivision, complete the development in accordance with the Water Supply Contract, and make payments to the Water Co. in satisfaction and settlement of the obligations under Paragraph 4.01(iv) of the Water Supply Contract, and Water Co. has agreed to accept such payments.

26.   IFIC has given Water Co. notice that IFIC asserts its rights as assignee and subrogee to all rights of King and Water Co. to collect the fee of $5,000.00 per lot upon any sale of any portion of the Subdivision and to refuse to provide water

- 10 -

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

service to King, Oak Shores and ROES 2 through 10 inclusive, and others, until Counterdefendants King, Oak Shores and ROES 2 through 10 inclusive, and others, and each of them, pay the sum of $5,000.00 per lot pursuant to Paragraph 4.1(iv) of the Water Supply Contract.

27.     On November 25, 2003, a Memorandum of Agreement giving constructive notice of the Water Supply Contract was recorded in the official records of San Luis Obispo County as Document No. 2003-135396, a copy of which is attached hereto as Exhibit D.  By said memorandum of Agreement and otherwise, Oak Shores and ROES 2 through 10, inclusive, had actual and constructive notice at the time when they acquired all legal, equitable and beneficial interests in the Subdivision and thus took title, and will take title, to the Subdivision and to lots contained therein subject to all requirements and restrictions of the Water Supply Contract, including the restriction on any sale or transfer of the Subdivision to anyone who does not assume all obligations of King thereunder.

28.     On July 1, 2005, a Subordination Agreement to Contract to Supply Water to Subdivision was recorded as Document No. 2005-054314 in the official records of San Luis Obispo County, by which USA Commercial Mortgage Company, as the holders of a deed of trust against the Subdivision subordinated its deed of trust to the Water Supply Contract.  Said deed of trust was recorded as Document No. 2005054313 on July 1, 2005 (the "Deed of Trust").  On July 9, 2013, the trustee under the Deed of Trust recorded a Notice of Default and Election to Sell as Document No. 2013039922 in the official records of San Luis Obispo County.  A copy of the Subordination Agreement is attached as Exhibit E.

29.     IFIC has also recorded a Notice of Pending Litigation (Lis Pendens) concerning its Counterclaim and Crossclaim previously filed in this action, giving notice of IFIC's rights and this present litigation, which was recorded as Document No. 2013061130 on October 29, 2013.

- 11 -

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

30.    IFIC is informed and believes, and on that basis alleges, that Oak Shores and ROES 2 through 10, and each of them, now hold a legal, equitable or beneficial interest in the Subdivision, or in one or more lots thereof, through a real estate purchase contract for the purchase of the Subdivision, or a portion thereof, or otherwise; or will take title to the Subdivision, or one or more lots therein, through the foreclosure sale on the Deed of Trust; or otherwise now hold or will hold an interest in the Subdivision or one or more lots thereof at the time when judgment is entered herein.

31.    Pursuant to the Water Supply Contract, the recorded Memorandum of Agreement and the recorded Subordination Agreement, and any other agreements entered into between or among the Water Co. and others, Oak Shores and ROES 2 through 10, inclusive, are obligated under the Water Supply Contract immediately upon close of any sale of one or more lots, or within 18 months after any sale of 5 or more lots of the Subdivision, to pay the sum of $5,000.00 per month to Water Co. In the event that IFIC makes any payment to Water Co. as sought in the Complaint, then IFIC shall have the right, as alleged above, to recover from King, Oak Shores, ROES 2 through 10, and others, and each of them, the sum of $5,000.00 per lot plus 10% interest per year and to require Water Co. to refuse to provide water service to any and all such lots under the Water Supply Contract until said sum is paid. The Water Supply Contract having been subordinated to the Deed of Trust, all obligations of Counterdefendant and Crossdefendants under the Water Supply Contract shall survive any foreclosure sale under said Deed of Trust.

32.    Moreover, in the event that Oak Shores and ROES 2 through 10, inclusive, or any of them, and any other successor-in-interest to King, fails to assume all of King's obligations as subdivider under the Water Supply Contract, then such Crossdefendants and others took title and will take title subject to the restriction on the Subdivision that Water Co. may refuse to provide any water service to said lots until Water Co. receives payment in the amount of $5,000.00 per

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1  lot plus 10% interest from Oak Shores, ROES 2 through 10 and any other
2  successors in interest to King.

3       33.    As of the date of this filing, Crossdefendants King, Resorts and
4  Jonatkim, and each of them,  have failed and refused to satisfy and discharge their
5  respective statutory and contractual obligations to indemnify IFIC; Crossdefendants
6  King, Oak Shores and ROES 2 through 10, inclusive, have failed to make the
7  aforementioned payment of $5,000.00 per lot; and Counterdefendant Water Co. has
8  disputed that IFIC is subrogated to, and that IFIC otherwise has, the right to collect
9  and enforce all payment obligations of King, Oak Shores, ROES 2 through 10 and
10  others under the Water Supply Contract and any related agreement as alleged herein
11  as subrogee to all such payment obligations upon payment made to King; and the
12  right to require Water Co. to enforce its right to refuse to provide water service until
13  it receives payment of said $5,000.00 per lot and the rights of King, Oak Shores,
14  ROES 2 through 10, inclusive, and others to require payment of said $5,000.00 per
15  lot from any purchaser as set forth in the Water Supply Contract.

16       34.    In addition to the foregoing, under the terms of the Indemnity
17  Agreements, and each of them, said defendants promised to deposit collateral with
18  IFIC upon demand therefor in the amount of any reserve that IFIC may set on
19  account of an asserted liability, whether or not IFIC has made any payment
20  therefor, and to make payment to IFIC as soon as liability is asserted against IFIC
21  equal to the amount of such reserve.

22       35.    IFIC has established a reserve in the amount of $305,000.00 as of the
23  date of this crossclaim based upon the liability asserted by Water Co. herein and has
24  made demand on Crossdefendants King, Resorts and Jonatkim, and each of them,
25  to deposit collateral with IFIC in that amount.  Said Crossdefendants have failed
26  and refused to post collateral with IFIC in the amount of that demand, and in any
27  other amount.

28

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

**INTERNATIONAL FIDELITY INSURANCE COMPANY'S**
**FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM**

## COUNT I

### (Breach of Contract – Indemnity Agreements

### Against King, Resorts)

36.   IFIC re-alleges and incorporates by reference the allegations contained in all of the preceding paragraphs of this Counterclaim and Crossclaim.

37.   Crossdefendants King and Resorts have breached their obligations under the Indemnity Agreements in that they have failed, and continue to fail to exonerate, indemnify and save IFIC from and against all loss as a result of having issued the Bonds (and each of them), which are express obligations under the Indemnity Agreements.

38.   Crossdefendants have also breached their obligations under the Indemnity Agreements in that they have failed to deposit collateral with IFIC in the amount of reserves set by IFIC as of the date of this first amended crossclaim, and in such other amount as may be established and demanded by IFIC from time to time.

39.   IFIC has performed, or has been excused from performing, all of the terms, covenants and conditions on its part to be performed under the Indemnity Agreement, if any exist.

40.   IFIC has incurred and will continue to incur losses, attorney fees, costs and expenses as a result of said Crossdefendants' material breaches of the Indemnity Agreement.

41.   As a result of the said Crossdefendants' material breaches of the Indemnity Agreement, the IFIC has incurred a loss in the amount of $740,829.00 to date and estimates an additional loss in excess of $300,000.00 for a total estimated at $1,040,829.00 or such other amount to be proven at trial.

WHEREFORE, IFIC prays for judgment as set forth below.

///

///

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 14 -

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

## COUNT II

### (Statutory Reimbursement

### Against King, Resorts, Jonatkim)

42.     IFIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Crossclaim and Counterclaim.

43.     Under California Civil Code section 2847, if a surety satisfies a principal obligation, or any part thereof, whether with or without legal proceedings, the principal is obligated to reimburse the surety for all disbursements, including, but not limited to, attorneys' fees, costs and other expenses.

44.     IFIC is informed and believes and thereon alleges that as a result of having issued the Bonds, IFIC has incurred a loss (exclusive of attorney fees) in the amount of at least $565,829.00 and will suffer an additional loss in the estimated amount of $300,000.00, or such other amount according to proof at trial, which loss must be reimbursed by Crossdefendants King, Resorts and Jonatkim under Civil Code section 2847.

WHEREFORE, IFIC prays for judgment as set forth below.

## COUNT III

### (Specific Performance – Indemnity Agreements

### Against Crossdefendants King and Resorts)

45.     IFIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Crossclaim and Counterclaim.

46.     IFIC is entitled to an order compelling Crossdefendants King and Resorts to specifically perform the terms and conditions of the Indemnity Agreements by not only indemnifying IFIC as alleged above, but also by posting collateral security with IFIC in an amount equal to its set reserves, in the amount of $305,000.00 or such other amount of reserves as IFIC may establish and demand from time to time.

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

47.   IFIC now seeks an Order from this Court compelling Crossdefendants King and Resorts, by specific performance, to comply with the Indemnity Agreements by posting said collateral with IFIC in an amount according to proof.

WHEREFORE, IFIC prays for judgment as set forth below.

## COUNT IV

### (Quia Timet – Indemnity Agreements

### Against Crossdefendants King and Resorts)

48.   IFIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Crossclaim and Counterclaim.

49.   IFIC is reasonably concerned that it may incur immediate and substantial loss and expense under the Bonds.

50.   Crossdefendants King and Resorts, and each of them, are obligated under the doctrine of quia timet to post collateral security to IFIC in an amount equal to IFIC's reasonably anticipated potential loss and expense, regardless of whether said sum has been actually incurred, as the result of or in consequence of IFIC having issued the Bonds.

WHEREFORE, IFIC prays for judgment as set forth below.

## COUNT V

### (Declaratory Relief – Water Supply Contract

### Against Counterdefendant and All Crossdefendants)

51.   IFIC re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Crossclaim and Counterclaim.

52.   IFIC contends, and Counterdefendant Water Co. and all Crossdefendants, and each of them, deny, that IFIC is the assignee of all of King's rights under the Water Supply Contract pursuant to the assignment provisions of the Indemnity Agreements.

53.   A dispute has arisen and now exists in that IFIC, on the one hand, and Counterdefendant and all Crossdefendants, on the other, disagree concerning the

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1   meaning and construction of Paragraph 4.01 of the Water Supply Contract in that,
2   among other things, IFIC contends, and Water Co. denies, that Water Co. has a
3   continuing right to enforce the $5,000.00 per lot payment obligation under
4   Paragraph 4.01(iv) by refusing to provide water service to any transferee of any
5   such lot until receipt of said payment; that the payment obligations of King, Oak
6   Shores, ROES 2 through 10 inclusive, and other successors in interest, are not
7   exonerated by any payment made by IFIC under the Bonds, but rather IFIC
8   becomes subrogated to said rights; and that Water Co. is not entitled to obtain a
9   double recovery by collecting said sums from both IFIC and also from any present
10  or future developer or owner of the Subdivision or lots, but rather, upon IFIC's
11  satisfaction of the obligation to pay Water Co. under Paragraph 4.01(iv), King's
12  obligation to Water Co. will have been satisfied in full and IFIC (rather than Water
13  Co.) will become entitled to collect said sums from King, Oak Shores, ROES 2
14  through 10 inclusive, and any other present or future successor-in-interest or other
15  owners of lots in the Subdivision, and further disagree concerning the dollar limit of
16  IFIC's potential obligation under the bond in issue in the Complaint, and IFIC's
17  right to be exonerated thereunder by California law.

18      54.     A further dispute has arisen, and now exists, in that IFIC contends, and
19  Counterdefendant Water Co. and all Crossdefendants, and each of them, deny, that
20  IFIC holds subrogation rights as a surety such that, in the event of IFIC's payment
21  to Water Co. as demanded in the Complaint on file herein, and effective
22  immediately upon said payment, IFIC shall be subrogated to all rights of Water Co.
23  to require Oak Shores, ROES 2 through 10, inclusive, and any other successor-in-
24  interest as owner or developer of the Subdivision (whether or not named as a
25  crossdefendant herein), to assume all of King's obligations under the Water Supply
26  Contract, including but not limited to the obligation to pay the sum of $5,000 per
27  lot to reimburse IFIC for any sum it pays to Water Co. under the Bond; all rights of
28  King, Oak Shores, ROES 2 through 10 inclusive, and any other such successor, to

**INTERNATIONAL FIDELITY INSURANCE COMPANY'S**
**FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM**

1    require payment of $5,000.00 per lot in the Subdivision to apply to reimburse IFIC

2    for any sum it pays to Water Co. under the Bond; and all rights of Water Co. to

3    require payment of $5,000.00 per lot in the Subdivision from owners and

4    transferees (including but not limited to King, Oak Shores, ROES 2 through 10

5    inclusive, and their respective assignees, transferees, and successors-in-interest) for

6    each water service provided to each such lot; and that IFIC has the right to compel

7    Water Co. to enforce the payment obligation of $5,000.00 per lot to IFIC to

8    reimburse IFIC as a condition of the provision of any service to any such lot.

9        55.    A further dispute has now arisen and now exists in that IFIC alleges,

10   and crossdefendants deny, that IFIC's liability to Water Co. to pay sums owed

11   under the Water Supply Contract is secondary and derivative, and that the liability

12   of crossdefendants King, Oak Shores, ROES 2 through 10 inclusive, and their

13   successors and assigns, is primary, such that IFIC is entitled to equitable indemnity

14   from said crossdefendants in the full amount of any sum that IFIC pays to Water

15   Co. based upon the allegations of the Complaint on file herein.

16       56.    IFIC now seeks an order of this Court declaring the rights, obligations

17   and duties of IFIC, Counterdefendant Water Co., and Crossdefendants King, Oak

18   Shores, ROES 2 through 10, and their successors-in-interest, and each of them, and

19   specifically declaring that:

20             (a)    IFIC holds subrogation and assignment rights as a surety such

21   that, in the event of IFIC's payment to Water Co. as demanded in the Complaint on

22   file herein, and effective immediately upon said payment, IFIC shall be subrogated

23   to all rights of Water Co. to require Oak Shores and ROES 2 through 10, inclusive,

24   and any other successor-in-interest, developer or lot owner, to assume all of King's

25   obligations under the Water Supply Contract, including but not limited to the

26   obligation to collect $5,000.00 per lot to apply to reimburse IFIC for any sum it

27   pays to Water Co. under the Bond; all rights of King, Oak Shores and ROES 2

28   through 10 inclusive to require payment of $5,000.00 per lot from all purchasers of

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 18 -

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1    lots in the Subdivision to apply to reimburse IFIC for any sum it pays to Water Co.

2    under the Bond; and all rights of Water Co. to require payment of $5,000.00 per lot

3    from all purchasers of lots in the Subdivision (including but not limited to King,

4    Oak Shores, ROES 2 through 10 inclusive, and their respective assignees,

5    transferees, and successors-in-interest) for each water service provided to each such

6    lot; and that IFIC has the right to compel Water Co. to enforce the payment

7    obligation of $5,000.00 per lot to IFIC to reimburse IFIC as a condition of the

8    provision of any service to any such lot.

9            (b)    Upon payment to Water Co. by IFIC, King, Oak Shores, ROES

10    2 through 10, inclusive, and their successors and assignees, shall owe the sum of

11    $5,000.00 per lot under the Water Supply Contract to IFIC and not to Water Co. (or

12    otherwise declaring to whom the $5,000.00 per lot is owed, and by whom, and in

13    what amount to each obligee/payee, as of the date of entry of judgment herein).

14            (c)    If and to the extent that Water Co. collects the sum of $5,000.00

15    per lot under the Water Supply Contract from King, Oak Shores, ROES 2 through

16    10, inclusive, or any other person, IFIC's obligation to Water Co. under the bond is

17    reduced by said payment.

18            (d)    If and to the extent that Water Co. fails and refuses, or has failed

19    and refused, to enforce the $5,000.00 per lot payment obligation under Paragraph

20    4.01(iv) of the Water Supply Contract by refusing to provide water service to any

21    transferee of any such lot until receipt of said payment (which IFIC requests that

22    this Court find to be the case), IFIC is exonerated under the bond in issue in the

23    Complaint (bond no. 0407462).

24            (e)    Upon payment made by IFIC to Water Co. under said bond,

25    Crossdefendants King, Oak Shores and ROES 2 through 10, and their successors

26    and assigns, will be obligated to indemnify IFIC in whole or in part against all sums

27    that IFIC pays to Water Co. to satisfy the obligations of King, Oak Shores, and

28    ROES 2 through 10 under the Water Supply Contract.

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

(f)     The dollar limit set forth in the bond in issue in the Complaint (bond no. 0407462) was reduced, pursuant to Section 3 of said bond, by the sum of $190,000.00 previously paid to Water Co. under the Water Supply Contract by Crossdefendants Jonatkim and King, such that the current maximum limit of the principal amount of IFIC's liability to Water Co. (if any such liability is found to exist) is $310,000.00 or such other amount as is according to proof at trial.

WHEREFORE, IFIC prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, IFIC prays:

1.     That IFIC be awarded money damages against Crossdefendants, and each of them, in the amount of at least $300,000.00 or such amount as shall be awarded at the trial of this action;

2.     For prejudgment interest on said damages;

3.     For an order of specific performance compelling Crossdefendants King and Resorts, and each of them, to post collateral to IFIC in an amount according to proof;

4.     For an order under the doctrine of quia timet compelling Crossdefendants King and Resorts, and each of them, to post collateral to IFIC in an amount according to proof;

5.     For an order of this Court declaring the rights, obligations and duties of the parties to this Counterclaim/Crossclaim, and specifically declaring that:

(a)     IFIC holds subrogation and assignment rights as a surety such that, in the event of IFIC's payment to Water Co. as demanded in the Complaint on file herein, and effective immediately upon said payment, IFIC shall be subrogated to all rights of Water Co. to require Oak Shores and ROES 2 through 10, inclusive, and any other successor-in-interest, developer or lot owner, to assume all of King's obligations under the Water Supply Contract, including but not limited to the

- 20 -

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

1  obligation to collect $5,000.00 per lot to apply to reimburse IFIC for any sum it
2  pays to Water Co. under the Bond; all rights of King, Oak Shores and ROES 2
3  through 10 inclusive to require payment of $5,000.00 per lot from all purchasers of
4  lots in the Subdivision to apply to reimburse IFIC for any sum it pays to Water Co.
5  under the Bond; and all rights of Water Co. to require payment of $5,000.00 per lot
6  from all purchasers of lots in the Subdivision (including but not limited to King,
7  Oak Shores, ROES 2 through 10 inclusive, and their respective assignees,
8  transferees, and successors-in-interest) for each water service provided to each such
9  lot; and that IFIC has the right to compel Water Co. to enforce the payment
10 obligation of $5,000.00 per lot to IFIC to reimburse IFIC as a condition of the
11 provision of any service to any such lot.

12        (b)    Upon payment to Water Co. by IFIC, then King, Oak Shores,
13 ROES 2 through 10, inclusive, and their successors and assignees, shall owe the
14 sum of $5,000.00 per lot under the Water Supply Contract to IFIC and not to Water
15 Co. (or otherwise declaring to whom the $5,000.00 per lot is owed, and by whom,
16 and in what amount to each obligee/payee, as of the date of entry of judgment
17 herein).

18        (c)    If and to the extent that Water Co. collects the sum of $5,000.00
19 per lot under the Water Supply Contract from King, Oak Shores, ROES 2 through
20 10, inclusive, or any other person, IFIC's obligation to Water Co. under the bond is
21 reduced by said payment.

22        (d)    If and to the extent that Water Co. fails and refuses, or has failed
23 and refused, to enforce the $5,000.00 per lot payment obligation under Paragraph
24 4.01(iv) of the Water Supply Contract by refusing to provide water service to any
25 transferee of any such lot until receipt of said payment (which IFIC requests that
26 this Court find to be the case), IFIC is exonerated under the bond in issue in the
27 Complaint (bond no. 0407462).

28

SALAMIRAD
MORROW
A PROFESSIONAL LAW
CORPORATION

- 21 -

INTERNATIONAL FIDELITY INSURANCE COMPANY'S
FIRST AMENDED COUNTERCLAIM AND CROSSCLAIM

1      (e)    Upon payment made by IFIC to Water Co. under said bond,

2  Crossdefendants King, Oak Shores, and ROES 2 through 10, and their successors

3  and assigns, will be obligated to indemnify IFIC in whole or in part against all sums

4  that IFIC pays to Water Co. to satisfy the obligations of King, Oak Shores, and

5  ROES 2 through 10 under the Water Supply Contract.

6      (f)    The dollar limit set forth in the bond in issue in the Complaint

7  (bond no. 0407462) was reduced, pursuant to Section 3 of said bond, by the sum of

8  $190,000.00 previously paid to Water Co. under the Water Supply Contract by

9  Crossdefendants Jonatkim and King, such that the current maximum limit of the

10  principal amount of IFIC's liability to Water Co. (if any such liability is found to

11  exist) is $310,000.00 or such other amount as is according to proof at trial.

12      6.    For attorney fees to the extent recoverable under contract and

13  applicable law;

14      7.    For costs of suit incurred herein; and

15      8.    For such other and further relief as the Court may deem just and

16  proper.

17

18  Dated: January 8, 2014                    SALAMIRAD MORROW P.C.

19

20                                    By: _____

21                                        Ali Salamirad
                                          Teresa L. Polk
22                                        Attorneys for Defendant,
                                          Counterclaimant and Crossclaimant
23                                        INTERNATIONAL FIDELITY
                                          INSURANCE COMPANY

24

25

26

27

28

SALAMIRAD
MORROW
PROFESSIONAL LAW
CORPORATION

- 22 -

**EXHIBIT A**

## General Indemnity Agreement

This Agreement of Indemnity (hereinafter called "Agreement") is made _____ February 5 _____, 20 04

by SMS RESORTS, INC. JOHN E. KING, PRESIDENT, JOHN E. KING, AN INDIVIDUAL, CAROLE D. KING,

*(Insert full name and Address)*

AN INDIVIDUAL _____, as Principal and the

Indemnitors indicated below; and International Fidelity Insurance Company, hereinafter referred to as Surety.

We the undersigned, hereinafter referred to as Indemnitors, hereby request International Fidelity Insurance Company, One Newark Center, Newark, New Jersey, 07102, to furnish bonds, undertakings, guarantees or other instruments of suretyship, hereinafter referred to as Bonds, and as an inducement therefore we make the following representations of fact, promises and agreements:

**REPRESENTATIONS OF FACT:**

1.  In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bonds.

2.  The Indemnitors have a substantial, material and beneficial interest in the obtaining of Bonds by any of the Indemnitor(s) and it is understood that the purpose of this Agreement is to induce International Fidelity Insurance Company to furnish bonds to Indemnitor(s).

**PROMISES AND AGREEMENTS:** In consideration of the furnishing of any such Bond by International Fidelity Insurance Company and for other valuable consideration, the Indemnitors hereby jointly and severally promise and agree as follows:

1.  To pay all premiums for each such bond, as they fall due, and until International Fidelity Insurance Company has been provided with competent legal evidence that the Bond has been duly discharged.

2.  To indemnify and exonerate International Fidelity Insurance Company from and against any and all loss and expense of whatever kind, including interest, court costs and counsel fees, hereinafter referred to as Loss, which it may incur or sustain as a result of or in connection with

    (1) the furnishing of any Bond; (2) the enforcement of this Agreement. To this end Indemnitors promise

    (a) To promptly reimburse International Fidelity Insurance Company for all sums paid on account of such loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such loss, (2) International Fidelity Insurance Company shall be entitled to reimbursement for any and all disbursements made by it in good faith, under the belief that it was liable, or that such disbursement was necessary or expedient.

    (b) To deposit with International Fidelity Insurance Company on demand the amount of any reserve against such loss which International Fidelity Insurance Company is required, or deems it prudent to establish, whether on account of an actual liability or one which is, or may be, asserted against it, and whether or not any payment for such loss has been made.

3.  This Agreement shall apply to bonds furnished as follows:

    (a) By International Fidelity Insurance Company as surety, or where procured by International Fidelity Insurance Company by any other co-surety, in which event such surety or co-surety shall also have the benefit of this Agreement and the right to proceed thereon.

    (b) At the request of Indemnitor(s).

    (c) For or on behalf of any of the following:

SENT TO HO
3/15/04

A-1

WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

WITNESS: The following signature(s) and seal(s) this __5th__ day of _____ FEBRUARY _____, 20 _04_ .

IMPORTANT: To all indemnitors, please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation). The Signature of each and every indemnitor to this instrument must be notarized.

SMS RESORTS, INC
_____ (Corporate Name)
By _____ (Seal)
JOHN EFKING, PRESIDENT
_____ (Print or type Name and Title)
Federal Tax ID   84-1620128 _____

Attest _____
_____ (Print or type Name and Title)

_____ (Corporate Name)
By _____ (Seal)
_____ (Print or type Name and Title)
Federal Tax ID _____

Attest _____
_____ (Print or type Name and Title)

_____ (Corporate Name)
By _____ (Seal)
_____ (Print or type Name and Title)
Federal Tax ID _____

Attest _____
_____ (Print or type Name and Title)

_____ (Corporate Name)
By _____ (Seal)
_____ (Print or type Name and Title)
Federal Tax ID _____

Attest _____
_____ (Print or type Name and Title)

_____ (Corporate Name)
By _____ (Seal)
_____ (Print or type Name and Title)
Federal Tax ID _____

Attest _____
_____ (Print or type Name and Title)

A 2

(1) One, some or all of the Indemnitors.

(2) Any joint venture or other form of common enterprise in which at the time the Bond was furnished, such Indemnitor or Indemnitors was a member.

(3) Any present or future affiliate or subsidiary of such Indemnitors.

(4) Any third Party at the request of an Indemnitor or Indemnitors and their subsidiaries and affiliates.

(d) At any time before this Agreement shall have been terminated, including any bond or Bonds which may have been furnished before the date hereof.

4. Indemnitors acknowledge and agree that the obligations contained in this Agreement were the consideration for the issuance of all bonds, including any bonds furnished prior to the date this Agreement was executed by Indemnitors.

5. The validity and effect of this General Indemnity Agreement shall not be impaired by, International Fidelity Insurance Company shall incur no liability on account of, and the Indemnitors need not be notified of:

(a) International Fidelity Insurance Company's failure or refusal to furnish any Bond, including final bond or bonds where International Fidelity Insurance Company has furnished a bid bond.

(b) International Fidelity Insurance Company's consent or failure to consent to changes in the terms and provisions of any bond, or the obligation or performance secured by any bond.

(c) The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any bond.

(d) The release by International Fidelity Insurance Company, on terms satisfactory to it, of any of the Indemnitors.

(e) Information which may come to the attention of International Fidelity Insurance Company, which affects or might affect its rights and liabilities or those of the Indemnitors or any of them.

6. The Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitor(s) or his/her property until the Indemnity(s)' obligation to International Fidelity Insurance Company under this Agreement have been satisfied in full.

7. Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued pursuant to this Agreement, notwithstanding that the entity on whose behalf said bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

8. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of International Fidelity Insurance Company.

9. Provided, however, that each Indemnitor reserves the right to terminate his/her participation in this Agreement as a continuing request to International Fidelity Insurance Company for the furnishing of Bonds, upon written notice to International Fidelity Insurance Company of not less than twenty days, whereupon the obligations and liability of an Indemnitor giving such notice shall be limited to those Bonds furnished before the effective date of the notice, including any Bond which was originally issued prior to the effective date of notice and renewed subsequent to the notice or effective date of termination.

A-3

## IF INDEMNITOR AN INDIVIDUAL, SIGN BELOW:

2241 Santa Ynez, San Luis Obispo, CA 93405
(Home Address)

By _____ (Individually)
JOHN E. KING
(Print or type Name)                    (S.S. #)

2241 Santa Ynez San Luis Obispo, CA 93405
(Home Address)

By _____ (Individually)
CAROLE D. KING
(Print or type Name)                    (S.S. #)

_____
(Home Address)

By _____ (Individually)
_____
(Print or type Name)                    (S.S. #)

_____
(Home Address)

By _____ (Individually)
_____
(Print or type Name)                    (S.S. #)

_____
(Home Address)

By _____ (Individually)
_____
(Print or type Name)                    (S.S. #)

## IF INDEMNITOR A PARTNERSHIP, SIGN BELOW:

Federal Tax ID _____

SS# _____

_____
(Name of Partnership)
By _____
(Partner's Signature)
_____
(Print or type Name)

Federal Tax ID _____

SS# _____

_____
(Name of Partnership)
By _____
(Partner's Signature)
_____
(Print or type Name)

## IF INDEMNITOR A LIMITED LIABILITY COMPANY, SIGN BELOW:

Federal Tax ID _____

SS# _____

_____
(Name of Company)
By _____
(Member/Manager Signature)
_____
(Print or type Name)

Federal Tax ID _____

SS# _____

_____
(Name of Company)
By _____
(Member/Manager Signature)
_____
(Print or type Name)

Page 4 of 5

A-4

State of ____CALIFORNIA____

County of __SAN LUIS OBISPO__

On __2/5/2004__ before me __Beverly J. Diggles__ , NOTARY PUBLIC
(here insert name of Notary Public)

personally appeared __JOHN E. KING__

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Beverly J Diggles__                    (Seal)

BEVERLY J. DIGGLES
Commission # 1420302
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 23, 2007

---

State of ____CALIFORNIA____

County of __SAN LUIS OBISPO__

On __2/5/04__ before me __Beverly J. Diggles__ , NOTARY PUBLIC
(here insert name of Notary Public)

personally appeared __CARLOLE D. KING__

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Beverly J Diggles__                    (Seal)

BEVERLY J. DIGGLES
Commission # 1420302
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 23, 2007

---

State of ____CALIFORNIA____

County of __SAN LUIS OBISPO__

On __2/5/04__ before me __Beverly J. Diggles__ , NOTARY PUBLIC
(here insert name of Notary Public)

personally appeared __JOHN E. KING__

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Beverly J Diggles__                    (Seal)

Page 5 of 5

BEVERLY J. DIGGLES
Commission # 1420302
Notary Public - California
San Luis Obispo County
My Comm. Expires Jun 23, 2007

A 5

**EXHIBIT B**

# AGREEMENT OF INDEMNITY

THIS AGREEMENT of Indemnity made and entered into this ___23rd___ day of ___June___ , 2005

by _____ John E. and Carole D. King _____

_____ 2241 Santa Ynez, San Luis Obispo, CA 93401 _____

(hereinafter called the Contractor) and _____

_____

_____

(hereinafter called the Indemnitors, if any) and *INTERNATIONAL FIDELITY INSURANCE*

*COMPANY*, (hereinafter called Surety), One Newark Center, 20ᵗʰ Floor, Newark, NJ 07102

## WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-adventurer with others, may desire, or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof, any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PREMIUMS

FIRST:      The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

Form # 1226                                                                    Page 1 of 6

## INDEMNITY

**SECOND:**     The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

## ASSIGNMENT

**THIRD:**     The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds. or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any assignment by the Contractor for the benefit of creditors' or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (5) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual- (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, or in transportation to any and all of said sites; (c) All the rights, title and interest of the Contractor in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and demands whatsoever which the Contractor may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.



## TRUST FUND

**FOURTH:** If any of the Bonds are executed in connection with a contract which by its terms or by law prohibits the assignment of the contract price, or any part thereof, the Contractor and Indemnitors covenant and agree that all payments received for or on account of said contract shall be held as a trust fund in which the Surety has an interest, for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and, further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## UNIFORM COMMERCIAL CODE

**FIFTH:** That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.

## TAKEOVER

**SIXTH:** In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

## CHANGES

**SEVENTH:** The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Indemnitors.

B3

## ADVANCES

**EIGHTH:**     The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## BOOKS AND RECORDS

**NINTH:**     At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts.

## DECLINE EXECUTION

**TENTH:**     Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

**ELEVENTH:**  The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

**TWELFTH:**    The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

**THIRTEENTH:**     The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

B-4

## SURETIES

**FOURTEENTH:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

**FIFTEENTH:** Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

## OTHER INDEMNITY

**SIXTEENTH:** That the Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## INVALIDITY

**SEVENTEENTH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise.

## ATTORNEY IN FACT

**EIGHTEENTH:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## TERMINATION

**NINETEENTH:** This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at One Newark Center, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors as to the Bonds that may have been theretofore executed.



**TWENTIETH:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

ATTEST:

_____

(Full Name & Address of Contractor)

_____

(Federal Tax I.D. Number)

By _____ {SEAL}

, President (Signature of President)

WITNESS:

By _____

John B. King, Individually (Signature of Indemnitor)

_____

(Social Security Number)

2241 Santa Ynez, San Luis Obispo, CA 93401
(Print name and Address of Indemnitor)

WITNESS:

By _____

Carole D. King, Individually (Signature of Indemnitor)

_____

(Social Security Number)

2241 Santa Ynez, San Luis Obispo, CA 93401
(Print name and Address of Indemnitor)

INTERNATIONAL FIDELITY INSURANCE COMPANY
(SURETY)

..................................................................... By .................................................... (SEAL)

Form # 1325

Page 5 of 8

B6

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of _California_

County of _San Luis Obispo_

On _June 24, 2005_ before me _Sara Hockaday, notary public_

personally Appeared _____ John B. King _____

☒ personally known to me or
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s), on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ Signature of Notary _____

Place Notary Seal Above

### OPTIONAL

**Description of Attached Document**

Title or Type of Document:   Agreement of Indemnity

Document Date:  June 23, 2005          Number of Pages:    8

Signer(s) Other Than Named Above:    Carole D. King

**Capacity(ies) Claimed by Signer**
Signer's Name:    John E. King

☑ Individual
☐ Corporate Officer - Title(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney in fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

B7

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of __California__

County of __San Luis Obispo__

On __June 24, 2005__ before me __Sara Hockaday, notary public__

personally Appeared __Carole D. King__

☑ personally known to me or
☐ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary

**SARA HOCKADAY**
Commission # 1549524
Notary Public - California
San Luis Obispo County
My Comm. Expires Feb 3, 2009

Place Notary Seal Above

## OPTIONAL

**Description of Attached Document**

Title or Type of Document: __Agreement of Indemnity__

Document Date: __June 23, 2005__      Number of Pages: __8__

Signer(s) Other Than Named Above: __John R. King__

**Capacity(ies) Claimed by Signer**
Signer's Name: __Carole D. King__

☑ Individual
☐ Corporate Officer - Title(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney in fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

Form # 1324                                    Page 8 of 8

B 8