1

2

3  O

4

5

6  NO JS-6 / NO TERMED PARTY

7

8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT OF CALIFORNIA

10

11  NACIMIENTO WATER COMPANY,      )  Case No. CV 13-07959 DDP (MRWx)
    INC.,                          )
12                                 )
              Plaintiff,           )  **ORDER RE: COUNTERDEFENDANTS' JOHN**
13                                 )  **KING, CAROLE KING, AND SMS**
       v.                          )  **RESORTS, INC'S MOTION FOR SUMMARY**
14                                 )  **JUDGMENT**
    INTERNATIONAL FIDELITY         )
15  INSURANCE CO. A New Jersey     )
    Corporation, et al.,           )  [Dkt. 81]
16                                 )
              Defendants.          )
17                                 )
    _____  )
18

19      Presently before the court is Cross-Defendants John King,

20  Carole King (collectively, "the Kings"), and SMS Resorts, Inc.

21  ("SMS")'s Motion for Summary Judgment.  Having considered the

22  submissions of the parties and heard oral argument, the court

23  grants the motion in part, denies in part, and adopts the following

24  order.

25  **I.  Background**

26      In 2003, Jonatkim Enterprises, the developer of a residential

27  subdivision in San Luis Obispo County, entered into a contract with

28

Plaintiff Nacimiento Water Company ("the Water Company").  Under the contract (the "Water Contract"), the Water Company agreed to provide water service to the residential lots in exchange for payment of $5,000 per lot, to be paid within four years of the recordation of the subdivision's final tract map.  The contract also required the issuance of a $500,000 performance bond, which was issued by Cross-Complainant International Fidelity Insurance Company ("IFIC") on the developer's behalf.

Developer Jonatkim made a partial payment to the Water Company, but then transferred its interest in the subdivision to the Kings.  The Kings also assumed Jonatkim's obligations under the Water Contract and obtained a surety bond ("the Water Bond") from IFIC similar to that originally issued to Jonatkim in favor of the Water Company.  IFIC also issued six other bonds ("the County bonds") related to the subdivision in favor of the County of San Luis Obispo.

Before the Kings purchased the subdivision from Jonatkim, they established Counterdefendant SMS to manage a separate and unrelated hotel property.  (Undisputed Fact 10.)  In 2004, IFIC issued five bonds ("the Hotel bonds") in favor of Southern California Gas Company in relation to the SMS hotel property.  (UF 12.)  Before issuing the Hotel bonds, IFIC required both the Kings and SMS to sign a General Indemnity Agreement ("the 2004 Agreement").  The 2004 agreement stated that "some or all of the [three] Indemnitors are required, or may desire" to give bonds, and that the three indemnitors had an interest "in the obtaining of Bonds by any of the Indemnitor(s)."  (King Decl., Ex. F.)  Under the 2004 agreement, the Kings and SMS agreed to indemnify IFIC for any

1   losses connected to the "the furnishing of any bond . . . for or on
2   behalf of . . . one, some or all of the Indemnitors." (Id.)   The
3   2004 Agreement also stated that it was in addition to, rather than
4   in lieu of, any other agreements or obligations undertaken in favor
5   of IFIC.   (Id.)   The 2004 Agreement also allowed each Indemnitor to
6   terminate participation upon written notice of at least 20 days.
7   (Id.)   Neither the Kings nor SMS ever terminated the 2004
8   Agreement.

9       In 2005, subsequent to the Kings' purchase of the subdivision
10  and prior to IFIC's issuance of the County bonds, the Kings
11  executed another General Indemnity Agreement ("the 2005
12  Agreement").   SMS was not a party to the 2005 Agreement.   The 2005
13  Agreement was not identical to the 2004 Agreement, and contained
14  additional provisions, including a homestead exemption waiver,
15  takeover provisions, and trust provisions.   (King Decl., Ex. E.)
16  Like the 2004 Agreement, however, the 2005 Agreement contained a
17  provision stating that any other rights IFIC had against the Kings,
18  including other indemnity agreements, were "in addition to, and not
19  in lieu of," the rights afforded to IFIC under the 2005 Agreement.
20  (Id.)

21      No claims were ever made on the Hotel bonds, which terminated
22  in 2006.   The Kings did not, however, complete the development of
23  the subdivision, which they lost to foreclosure.   In 2010, the
24  Water Company notified IFIC that the Kings had defaulted on the
25  Water Bond.   The Water Company later filed the instant suit against
26  IFIC to recover on the Water Bond.

27      IFIC's Second Amended Counterclaim alleges that the Kings
28  defaulted not only on the Water Bond, but on two of the six County

Bonds as well.  (Second Amended Counterclaim ¶ 19.)  IFIC asserts
four causes of action seeking indemnification for losses related to
the three defaulted bonds from both the Kings and SMS.  The instant
motion seeks summary judgment against IFIC on all claims against
SMS and Water bond-based claims against the Kings.

## II.  Legal Standard

Summary judgment is appropriate where the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show "that there is no
genuine dispute as to any material fact and the movant is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party
seeking summary judgment bears the initial burden of informing the
court of the basis for its motion and of identifying those portions
of the pleadings and discovery responses that demonstrate the
absence of a genuine issue of material fact. See Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from
the evidence must be drawn in favor of the nonmoving party. See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the
moving party does not bear the burden of proof at trial, it is
entitled to summary judgment if it can demonstrate that "there is
an absence of evidence to support the nonmoving party's case."
Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to
the nonmoving party opposing the motion, who must "set forth
specific facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 256. Summary judgment is warranted if a party
"fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party

4

will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.
A genuine issue exists if "the evidence is such that a reasonable
jury could return a verdict for the nonmoving party," and material
facts are those "that might affect the outcome of the suit under
the governing law." <u>Anderson</u>, 477 U.S. at 248. There is no genuine
issue of fact "[w]here the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party." <u>Matsushita</u>
<u>Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986).
It is not the court's task "to scour the record in search of a
genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278
(9th Cir.1996). Counsel has an obligation to lay out their support
clearly. <u>Carmen v. San Francisco Sch. Dist</u>., 237 F.3d 1026, 1031
(9th Cir.2001). The court "need not examine the entire file for
evidence establishing a genuine issue of fact, where the evidence
is not set forth in the opposition papers with adequate references
so that it could conveniently be found." <u>Id.</u>

**III. Discussion**

    A.  SMS

    SMS argues that under the 2004 Agreement, SMS only agreed to
indemnify IFIC for losses related to the Hotel bonds, and that the
2004 Agreement has no bearing on the Water bond or County bonds.
(Motion at 9.) Citing but a single case authority, SMS appears to
contend that the conduct of the parties indicates that the 2004
Agreement never applied to bonds other than the Hotel bonds and
that, in any event, the terms of the 2005 Agreement superceded the
2004 Agreement.

    Indemnity agreements are interpreted under the same rules that
govern contract interpretation generally. <u>City of Bell v. Superior</u>

1  <u>Court</u>, 220 Cal.App.4th 236, 247 (2013).  "[T]he interpretation of a

2  contract must give effect to the mutual intention of the parties .

3  . . at the time the contract is formed . . . ."  <u>E.M.M.I. Inc. v.</u>

4  <u>Zurich American Ins. Co.</u>, 32 Cal.4th 465, 470 (2004) (internal

5  quotation and citation omitted).  "Such intent is to be inferred,

6  if possible, solely from the written provisions of the contract."

7  <u>Id.</u>  "When a dispute regarding the meaning of a contractual

8  provision exists, the court must first determine whether on its

9  face the language is capable of differing or inconsistent

10 reasonable interpretations."  <u>City of Bell</u>, 220 Cal.App.4th at 248.

11 "If the instrument is reasonably susceptible to the interpretation

12 urged, the court must receive any relevant extrinsic evidence the

13 party puts forth to prove its interpretation."  <u>Id.</u>; <u>See also</u>

14 <u>Rodman v. Safeway, Inc.</u>, No. 11-cv-3003-JST, 2015 WL 604984 at *4

15 (N.D. Cal. Feb. 12, 2015).

16      Here, SMS does not identify any particular term of the 2004

17 Agreement to which it takes exception, let alone identify a

18 specific alternative meaning for any specific term.  Presumably,

19 however, SMS reads the 2004 Agreement's language referring to the

20 Indemnitors' liability for losses related to "the furnishing of any

21 bond . . . for or on behalf of . . . one, some or all of the

22 Indemnitors" to mean something along the lines of "any bond

23 relating to the SMS Hotel property only" or "any bond for or on

24 behalf of SMS only."  Even provisionally considering the extrinsic

25 evidence offered – namely, that IFIC required separate indemnity

26 agreements from the Kings for the County bonds and another,

27 unrelated hotel property bond – SMS' proposed construction is not

28 reasonable.  Such a construction would render the terms "any" and

"some or all of the Indemnitors" meaningless or superfluous.  See
Brown v. DIRECTV, LLC, No. CV 12-8382 DMG, 2013 WL 3273811 at *7
(C.D. Cal. June 26, 2013) ("[W]here possible, a court must give
effect to every word [or] phrase within a contract.").  Similarly,
the "in addition to" language (King Decl., Ex. F ¶ 8) providing
that other agreements undertaken in favor of IFIC would be
additional to, and not supplanted by, the 2004 Agreement would have
no meaning if the 2004 Agreement were read to encompass the
entirety of SMS' potential obligations.[1]

SMS has not advanced any reasonable interpretation of the 2004
Agreement that would excuse it of its obligation to indemnify IFIC
for losses related to "any bond" issued or behalf of "one, some or
all of the Indemnitors."  The motion is therefore denied with
respect to claims against SMS.

B.   Water Bond Claims against the Kings

The Kings also seek summary judgment on IFIC's Water-bond
based claim against them because, the Kings contend, the Water
Company's underlying claim against the Kings is time barred.  (Mot.
at 12.)  Under the California Code of Civil Procedure, "[i]f the
obligations under a surety bond are conditioned upon performance of
the principal, the expiration of the statute of limitations with
respect to the obligations of the principal, other than the
obligations of the principal under the bond, shall also bar an

---

[1] For similar reasons, the 2005 Agreement does not conflict
with the 2004 Agreement.  While the 2005 contains additional
provisions, such as the Kings' personal waiver of the homestead
exemption, those provisions are of the type contemplated by the "in
addition to" language present in both the 2004 and 2005 Agreements.

1   action against the principal or surety under the bond . . . ."

2   Cal. Code Civ. Pro. § 359.5.

3        IFIC does not dispute that the Water Contract required payment

4   within four years of recordation of the final tract map, that the

5   map was recorded on October 7, 2003, or that the Kings breached the

6   Water contract by failing to make payments by October 7, 2007.  Any

7   breach of contract claim the Water Company had against the Kings,

8   therefore, appears to have expired on October 7, 2011.  Cal. Code

9   Civ. Pro. § 337.

10       Instead, IFIC contends that a grant of summary judgment would

11  be premature because the Kings may still be required to indemnify

12  IFIC for its losses related to the two County bond payments.  That

13  possibility, however, poses no obstacle to a grant of summary

14  judgment regarding the Water bond-based claim against the Kings.

15  Because the underlying Water bond claim against the Kings is time

16  barred, the motion for summary judgment is granted with respect to

17  IFIC's derivative claim.

18  **IV.  Conclusion**

19       For the reasons stated above, the Motion for Summary Judgment

20  is DENIED with respect to SMS.  The Motion is GRANTED with respect

21  to the Water-bond based claims against the Kings.

22

23

24  IT IS SO ORDERED.

25

26  Dated: March 19, 2015                HON. DEAN D. PREGERSON

27                                       United States District Judge

28

8